UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 24 CR 503 |
| v. | Hon. Matthew F. Kennelly |
| EDMUND SINGLETON | |

**GOVERNMENT'S RESPONSE TO DEFENDANT EDMUND SINGLETON'S
MOTION TO SUPPRESS EVIDENCE**

## I.   INTRODUCTION

At approximately 7:00 p.m. on November 3, 2022, defendant Edmund Singleton participated in the carjacking of Victim A at a gas station located on the South Side of Chicago. Singleton drove co-defendant Marquell Davis and Individual A to the gas station in a silver Jeep. Davis and Individual A got out of the Jeep and stole Victim A's Infiniti at gunpoint. About an hour and a half later, Singleton participated in the attempted carjacking of Victim B at another gas station on the South Side. Singleton drove co-defendants Davis and Ramone Bradley to the gas station in the silver Jeep. Davis and Bradley got out of the Jeep and attempted to steal Victim B's BMW at gunpoint; however, they were unable to drive away in the BMW because, owing to the fact that Victim B has polio, the car had been modified with custom hand controls that they were unable to operate. At approximately 10:30 p.m., officers with the Chicago Police Department located and pursued the Jeep used by the offenders. Following a chase, the police apprehended Singleton, Davis, and Bradley. In connection with the arrests, the police recovered three cell phones belonging to Singleton.

The police applied for warrants to search the three cell phones. Cook County Judges Domenica Stephenson and Laura Ayala-Gonzalez issued the requested search warrants. During a search of the phones, law enforcement recovered items implicating Singleton in the carjacking offenses, including photographs of Singleton with a firearm recovered following the police chase, photographs and videos in a Jeep SRT, the same car that was used as a getaway vehicle, and location information placing Singleton in the vicinity of the carjackings. Later, the FBI applied for warrants seeking location-related information for the three phones. Chief Magistrate Judge Young B. Kim issued the requested warrants. The cell-site information for one of Singleton's phones is consistent with the location information from the Cellbrite extractions. In October 2024, Singleton was charged in this case with conspiracy to commit a carjacking (Count One), carjacking (Count Two), using, carrying, and brandishing a firearm during and in relation to a carjacking (Count Three), attempted carjacking (Count Four), and being a felon in possession of a firearm (Count Five).

Singleton is seeking to suppress the evidence seized from his cell phones as well as the cell phone location evidence from his cell phone provider. R. 65. Singleton claims that the state search warrants were overbroad and that the cell site warrants should be suppressed as fruits of the poisonous tree. *Id*. As discussed below, Singleton's suppression arguments lack merit and should be denied. There was ample probable cause supporting the state search warrants, which were not overbroad. Even if, for the sake of argument, the warrants were somehow deficient, law enforcement

relied on them in good faith. Moreover, there is no basis for suppressing the cell site warrants, for which there was ample probable cause even without accounting for the evidence obtained from the phones.

Singleton has also moved for a bill of particulars concerning the firearm charged in Count Three. R. 65. That motion should also be denied. The indictment properly pleads an offense, and the information produced in discovery sufficiently apprised defendant of the firearms that were brandished during the carjacking of Victim A.

## II.    FACTUAL BACKGROUND

### A.    Carjacking Offenses

On November 3, 2022, at approximately 7:00 p.m., Davis and Individual A carjacked Victim A at gunpoint. R. 65-2 at 7 (Federal Search Warrant Affidavit). Victim A was pumping gas into his black 2015 Infiniti Q50 at a gas station located on the 10000 block of South Michigan Avenue in Chicago. *Id.* Singleton, driving a silver Jeep SUV, drove past the gas station and pulled over on the side of the road. *Id.* Singleton then performed a U-turn and pulled up next to the Infiniti. *Id.* Davis and Individual A got out of the Jeep. *Id.* Davis approached Victim A while Individual A got into the front driver's seat of the Infiniti. *Id.* Davis pointed a handgun at Victim A and knocked him to the ground. *Id.* Davis went through Victim A's pockets and got into the front passenger seat of the Infiniti. *Id.* The Infiniti and the Jeep, in tandem, left the gas station driving northbound on South Michigan Avenue. *Id.*

Later that night, at approximately 9:30 p.m., defendants attempted to carjack Victim B. R. 65-2 at 8. Victim B was pumping gas into his 2022 BMW X6 at a gas

station located in the 3100 block of South Michigan Avenue in Chicago. *Id.* at 9. Singleton, still driving the silver Jeep SUV, pulled up next to the BMW. *Id.* Davis and Bradley got out of the Jeep. *Id.* Bradley immediately pointed a handgun at Victim B, but Bradley fell to the ground. *Id.* at 10. Davis approached Victim B with a handgun and Victim B fell to the ground. *Id.* Davis grabbed Victim B's car keys and went through Victim B's pockets and took his wallet. *Id.* at 9. Bradley got in the driver's seat and Davis got in the front passenger seat of Victim B's BMW. *Id.* Victim B told officers that he was diagnosed with polio as a young child and his BMW was modified with custom hand controls to operate his vehicle. *Id.* Defendants were not able to operate the vehicle due to the modifications made to accommodate Victim B. *Id.* They got out of his vehicle, got back into the Jeep, and fled in an unknown direction. *Id.*

**B.  Arrests of Defendants and Recovery of Singleton's Cell Phones**

At approximately 10:30 p.m., the Jeep was observed by law enforcement traveling southbound on South Aberdeen near West 83rd Street and tracked by law enforcement helicopter. *Id.* at 10. The helicopter followed the Jeep until it stopped under an underpass near 94th and South Woodlawn Avenue. *Id.* Singleton, Davis, and Bradley ran out from under the underpass into a residential area, where they were apprehended by officers with the Chicago Police Department. *Id.* at 10-11.

Davis was wearing clothing consistent with one of the offenders in both of the carjackings, as captured by gas station surveillance video. *Id.* at 11. In Davis's front pocket, law enforcement recovered Victim A's car key. *Id.* Davis was also carrying a backpack, inside of which law enforcement located two IDs belonging to Victim B. *Id.*

4

Bradley was also wearing clothing consistent with one of the offenders in the attempted carjacking of Victim B, as captured by gas station surveillance video. *Id.* In the area where Singleton was arrested, officers located keys to the silver Jeep SUV that had been abandoned under the underpass. *Id.* Officers located three firearms in the area where Singleton, Davis, and Bradley were arrested. *Id.* at 14.[1] They also recovered a total of six phones from defendants. *Id.*

### C. State Search Warrants

Two of the phone were recovered from Singleton, namely, a purple iPhone in a silver case with Singleton's driver's license tucked between the phone and the phone case (R. 65-1 at 1-11, State Search Warrant Application 22SW10193) ("Singleton Phone 2")[2]; and a white iPhone in a black "Backwoods" case, with a Visa debit card in the name of "Jarell Singleton" inventoried with the phone (R. 65-1 at 23-33, State Search Warrant Application 22SW11351) ("Singleton Phone 3").[3] In Davis's backpack, CPD recovered a black iPhone in a "Supreme" case (GX 1, State Search Warrant Application 22SW10192) ("Singleton Phone 1"). Evidence recovered during the search of Singleton Phone 1 revealed that the phone belonged to Singleton. CPD also obtained warrants to search two of Davis's cell phones (Davis Phone 1 and Davis

---

[1] The federal warrant stated only two were recovered; a third was recovered later in the evening.

[2] In Singleton's motion, defense counsel incorrectly identifies the phones inconsistent with the warrants. The government is using the naming convention used in the federal warrants so as to remain consistent.

[3] CPD Detective Siegel originally believed this phone was a black iPhone in a Backwoods case and obtained a warrant for it on December 6, 2022 (warrant 22SW10194; R. 65-1 at 12-22). On December 16, 2022, Detective Siegel obtained a corrected warrant for a white iPhone in a Backwoods case (warrant 22SW11351; R. 65-1 at 23-33).

Phone 2) and Bradley's cell phone (Bradley Phone 1).

CPD Detective Adam Siegel applied for warrants to search the cell phones recovered from defendants. The affidavits submitted in support of the warrants for each phone were substantially the same. The affidavits set forth facts concerning the armed robbery and carjacking of Victim A; the attempted armed robbery and carjacking of Victim B; and apprehension of the suspected offenders. R. 65-1 at 5. In addition, Detective Siegel stated that a week prior to the November 3, 2022 offense conduct, a CPD officer had observed Singleton driving the silver Jeep used in connection with the carjackings. *Id.* Detective Siegel also attested, based on his training and experience, that he was "aware from previous investigations that offenders who separate into different vehicles, in this case the gray Jeep and [Victim A's] black Infiniti, they use cell phones to communicate with each other and advance their criminal activities." *Id.* at 7-8.

### D. Evidence Located in Singleton's Cell Phones

Among other relevant items, law enforcement recovered the following from Singleton Phone 1:

- Evidence of ownership, including photographs of Singleton's Illinois driver's license and usernames and passwords for Edmundsingleton1990@gmail.com

Among other relevant items, law enforcement recovered the following from Singleton Phone 2:

- Location information from the Cellbrite extraction of the phone from November 3, 2022.

- Searches on October 22, 2022 for a 2018 Jeep Grand Cherokee SRT— a 2019 Jeep Grand Cherokee SRT reported stolen October 19, 2022

was used in the carjackings.

- A photograph of three firearms on the floorboard of an SRT from October 26, 2022 (Image 1 below), two of which appear to be the same firearms recovered after the carjackings on November 3, 2022 (Images 2 and 3 below).



- A photograph from November 3, 2022 (Image 4) of Singleton with a firearm consistent with one of the three firearms recovered after the carjackings on November 3, 2022 (Image 5 below).



Among other items, law enforcement also recovered the following from Singleton Phone 3:

- Location information from the Cellbrite extraction of the phone from November 3, 2022.

- A photograph (depicted below) of Singleton from October 31, 2022 with an individual who appears to be Davis with a tan and snakeskin firearm in his pocket and individual wearing the same hoodie as Bradley when he was arrested after the carjackings.



### E.    Federal Cell Site Warrants

On August 7, 2024, Magistrate Judge Young B. Kim issued search warrants for cell site location information for phone numbers (773) 600-5709 (24 M 614) and phone number (773) 895-7281 (24 M 615), both of which were used by Singleton.[4] R. 65-2. FBI Special Agent Karl Fredriksen submitted an affidavit in support of the cell site warrant applications. *Id.* In the affidavit, Special Agent Fredriksen set forth facts concerning the armed robbery and carjacking of Victim A; the attempted armed robbery and carjacking of Victim B; and apprehension of the suspected offenders; the identification of Singleton driving the getaway vehicle a week prior to the carjackings; and information obtained from Singleton, Davis, and Bradley's cell phones pursuant

---

[4] Singleton states that the 2024 warrants identified the wrong phone numbers associated with Singleton Phone 2. Dkt. 65 at 6 (Motion to Suppress). To clarify, the affidavit incorrectly states that Singleton Phones 2 and 3 have the same number. Instead, Singleton Phones 1 and 2 share the same number. The phone number digits were correct.

to the state warrants. *Id.* at 4-21. The location information obtained from the warrants reflects that Singleton's -5709 phone number used cell towers consistent with the location information from the Cellbrite extraction on the night of the carjacking offenses.

## III. ARGUMENT

The Court should deny Singleton's motion to suppress and for a bill of particulars. The state search warrants were supported by probable cause and sufficiently particular. Moreover, law enforcement relied on the warrants in good faith. In turn, there is no reason to suppress the federal cell site warrants, which were also supported by probable cause. Singleton's motion for a bill of particulars should also be denied because the indictment properly pleads an offense and the discovery produced in this case sufficiently apprises Singleton of the firearms that were brandished during the carjacking of Victim A.

### A. The State Search Warrants Were Supported by Probable Cause.

Probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014); *see also United States v. Seiver*, 692 F.3d 774, 777 (7th Cir. 2012) ("[P]robable cause is far short of certainty . . . and not a probability that exceeds 50 percent (more likely than not), either."). "Probable cause is established when, considering the totality of the circumstances, there is sufficient evidence to cause a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Harris*, 464 F.3d 733, 738 (7th Cir. 2006) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)); *see also Texas v. Brown*, 460 U.S. 730, 742 (1983) ("As the Court frequently has remarked, probable cause is a flexible, common-sense standard.").

"[A]ll that is required for a lawful search is probable cause to believe that the search will turn up evidence or fruits of crime, not certainty that it will." *United States v. Ramirez*, 112 F.3d 849, 851–52 (7th Cir. 1997).

A search warrant affidavit establishes probable cause when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime. *Gates*, 462 U.S. at 238; *see also United States v. Scott*, 731 F.3d 659, 665 (7th Cir. 2013).

This Court must show "great deference" to the magistrate judge's determination to issue the warrant. *United States v. Leon*, 468 U.S. 897, 914 (1984); *see also United States v. Sutton,* 742 F.3d 770, 773 (7th Cir. 2014) ("When a search is authorized by a warrant, deference is owed to the issuing judge's conclusion that there is probable cause.") (citing *United States v. Sims*, 551 F.3d 640, 644 (7th Cir. 2008)). Here, the evidence set forth in Detective Siegel's affidavit established probable cause to believe that a search of Singleton's cell phones would uncover instrumentalities, evidence, or fruits of Armed Robbery, in violation of 720 ILCS 5/18-2.

Specifically, the affidavits recounted the armed robbery and carjacking offenses that occurred on November 3, 2022, including the use of the silver Jeep as the offenders' getaway vehicle, which law enforcement had observed Singleton driving a week earlier; and that Singleton, Davis, and Bradley were arrested fleeing from the Jeep just over an hour after the second offense. Based on his law

enforcement experience, Detective Siegel explained that offenders who separate into separate vehicles use cellphones to communicate with each other about their criminal activities, as defendants did during the first carjacking. Given the totality of this evidence, there was a fair probability that instrumentalities, fruits, and evidence of the armed robberies would be located in the cell phones that were recovered from the suspected offenders, including Singleton's phones.

### B. The State Warrants Satisfy the Particularity Requirement.

The Fourth Amendment requires that the warrant particularly describe the place to be searched and the items to be seized. U.S. Const. Amend. IV.

Here, it is uncontested that each of the three warrants specifically described the place to be searched – for example, a "light purple iPhone in a silver case belonging to Edmund Singleton…" The description left no doubt as to what place officers were authorized to search, similar to the address of a house. Moreover, it is uncontested that probable cause existed to search the place described in the warrant—the iPhone.

Next, the Fourth Amendment requires the warrant to particularly describe the items to be seized during the search. Here, each warrant did so. Each warrant specified the 11 types of items officers could seize, as long as they related to the offense of armed robbery under Illinois law. The level of specificity was such that "the officers executing the warrant are able to identify the things to be seized with reasonable certainty." *United States v. Sleet*, 54 F.3d 303, 307 n. 1 (7th Cir.1995) (quotations omitted). An officer executing the warrant would know with reasonable certainty what are "phone calls," "voicemails," and "e-mails" relating to the specific

offense of armed robbery. Moreover, seizure of the items listed, by being limited to those relating to the specific offense of armed robbery, served "a valid law enforcement purpose." *United States v. Stefonek*, 179 F.3d 1030, 1033 (7th Cir. 1999). Communications about the crime, location information relating to the criminal activity, and other documents about the crime, all would clearly be important evidence of the criminal offense. Nothing more was required to satisfy the Fourth Amendment's particularity requirement as to items to be seized.

Because the warrant specified the place to be searched and the items to be seized, and there was probable cause to search the place described, the Fourth Amendment's warrant requirements were satisfied.

Defendant appears to complain in a summary fashion that the list of items to be seized should have been more specific than it was. Defendant's complaint is inconsistent with Seventh Circuit precedent.

The Seventh Circuit has repeatedly made clear that the warrant must describe the objects of the search only with "reasonable specificity" and "need not be elaborately detailed." *United States v. Somers*, 950 F.2d 1279, 1285 (7th Cir.1991); see also *United States v. Reed,* 726 F.2d 339, 342 (7th Cir.1984). The description must only be "as particular as circumstances permit," *United States v. Jones,* 54 F.3d 1285, 1290 (7th Cir.1995) (internal quotation omitted), and if "detailed particularity is impossible, generic language is permissible if it particularizes the types of items to be seized," *United States v. Hall,* 142 F.3d 988, 996 (7th Cir. 1998).

12

That's exactly what the warrants here did: particularized the types of items to be seized because more detailed particularity about evidentiary items on the phone was impossible. The state search warrants were as particular as the circumstances reasonably permitted. The police did not know where on the phone the evidence would be located or the form that evidence would take. That is, they did not have the ability to describe with more specificity the objects of the search. Even as to date ranges, limiting the state warrants for the cell phones to the date immediately before and after the offenses is not required where, as here, officers did not know the extent of the planning and preparation for these offenses. The issuing judge "may draw reasonable inferences about where evidence is likely to be found based on the nature of the evidence and the offense," *United States v. Miles*, 86 F.4th 734, 742 (7th Cir. 2023), and as noted above, this Court must show "great deference" to the magistrate judge's determination to issue the warrants in this case. *Leon*, 468 U.S. at 914. Particularity is a "highly fact- and context-specific." *Vizcarra-Millan*, 15 F.4th at 502, so deference to the magistrate judge's common sense determination is especially appropriate.

*United States v. Bishop* is instructive because the Seventh Circuit rejected an almost identical claim to what defendant asserts. 910 F.3d 335 (7th Cir. 2018). In *Bishop*, the items to be seized were described even more broadly as "any evidence (including all photos, videos, and/or any other digital files, including removable memory cards)" related to criminal recklessness with a deadly weapon or dealing illegal drugs. *Id.* at 336. The defendant in *Bishop*, like Singleton, complained that the

warrant "permit[ted] the police to look at every file on his phone and decide which files satisfy the description" and therefore was a "general warrant." *Id.* The Seventh Circuit rejected this argument, explaining that "a warrant authorizing a search for documents that will prove a crime may authorize a search of every document the suspect has, because any of them might supply evidence" and the "incriminating evidence may be in any file or folder." *Id.* at 337. That's because "[c]riminals don't advertise where they keep evidence," so an officer can't limit the search ex ante to more specific places on the phone or types of records to be found on the phone. *Id.* at 336. A warrant lacks particularity "*only if* some more-specific alternative would have done better at protecting privacy while still permitting legitimate investigation," such as if officers knew the suspect kept all of his incriminating evidence in a particular place. *Id.* at 337 (emphasis added). Like in *Bishop*, the police here "did not know where on his phone" Singleton kept evidence of his carjackings – in text messages, on messaging apps, in photos, on his phone's GPS data, etc. *Id.* at 338. The state warrants were "as specific as circumstances allowed" and the "Constitution does not require more." *Id.*

Repeatedly, the Seventh Circuit and "other courts have approved warrants at least as general as the one attacked here." *United States v. Shoffner*, 826 F.2d 619, 631 (7th Cir. 1987), citing *United States v. Bentley,* 825 F.2d 1104, 1109–10 (7th Cir. 1987) ("every business paper"); *United States v. Peters,* 791 F.2d 1270, 1278–79 (7th Cir. 1986) ("gems, narcotics and currency"); *United States v. Vanichromanee,* 742 F.2d 340, 347 (7th Cir. 1984) ("documents, papers, receipts and other writings which are

evidence of a conspiracy to violate" 21 U.S.C. § 963); *Reed,* 726 F.2d at 342 (proof of residency); *United States v. Malik,* 680 F.2d 1162, 1165 (7th Cir. 1982) ("books, papers, [and] documents" and baseballs and other items shipped from Pakistan as part of a heroin importation conspiracy); *see also United States v. Strand,* 761 F.2d 449, 452–53 (8th Cir. 1985) ("stolen mail which is evidence of and the fruits of the crime of theft from the mail"); *United States v. Blum*, 753 F.2d 999, 1000 (11th Cir. 1985) ("Porcelain ware, toys, furniture, baby products and miscellaneous merchandise fraudulently obtained from vendors throughout the United States."); *United States v. Gomez-Soto,* 723 F.2d 649, 652–53 (9th Cir. 1984) ("representative original samples of handwriting," documents indicative of defendant's residence or citizenship, records of international travel, documents relating to any business transactions of defendant or his three corporations for the previous five years).

On the other hand, in *Socha v. City of Joliet, Illinois*, officers had "probable cause to search for a single text message," yet the warrant authorized searching a broad array of data, including images, videos, email, buddy lists, and more. 107 F.4th 700, 709-10 (7th Cir. 2024). The Seventh Circuit noted that this "broad language would be proper if not for the fact that officers knew exactly what evidence they were looking for and, as a matter of common knowledge, where it might be found: a single text message in her text history." *Id.* at 710. That is, the officers were allowed "to search for items that [were] unlikely to yield evidence of the crime," specifically, the text message. *Vizcarra-Millan*, 15 F.4th at 502. That was not the case here, in *Bishop*, or in many of the other cases cited above, so a much broader list was proper.

This warrant was sufficiently particular especially where the 11 types of items officers could seize specifically related to the offense of armed robbery under Illinois law. *See, e.g, Bishop*, 910 F.3d at 337 ("It is enough. . . if the warrant cabins the things being looked for by stating what crime is under investigation"); *United States v. Kuc*, 737 F.3d 129 (1st Cir. 2013) (search warrant in fraud case was sufficiently particular where it authorized the seizure of "'[a]ll records . . . and tangible objects that constitute evidence, fruits, and instrumentalities of violations of [specified criminal statutes] including, without limitation,' certain enumerated categories of items"; although the defendant argued that the phrase "without limitation" unlawfully expanded the scope of the warrant, the court ruled that it was merely a "transitional phrase" and that in context, the warrant was sufficiently particular because it described the targets of the fraud and some of the means by which the fraud was committed).

Courts often find a lack of particularity when a warrant seeks evidence of criminal activity generally, without limiting the search to evidence of a specific offense. *See, e.g., United States v. Galpin*, 720 F.3d 436 (2d Cir. 2013) (officers suspected that the defendant, a registered sex offender, had failed to disclose an online identifier and was using the internet to make inappropriate contact with children; they obtained a search warrant that authorized a search for "evidence that will constitute, substantiate or support violations of . . . NYS Penal Law and or Federal Statutes"; this was "facially overbroad" and lacked particularity); *Cassady v. Goering*, 567 F.3d 628 (10th Cir. 2009) (search warrant was not particular where

there was probable cause to search a farm for evidence of marijuana cultivation yet warrant authorized a search for "all . . . evidence of criminal activity" under the laws of any jurisdiction); *Center Art Galleries-Hawaii, Inc. v. United States*, 875 F.2d 747 (9th Cir. 1989) ("The warrants' provision for the almost unrestricted seizure of items which are 'evidence of violations of federal criminal law' without describing the specific crimes suspected is constitutionally inadequate."). *But see United States v. Castro*, 881 F.3d 961 (6th Cir. 2018) (officers suspected that the defendant was involved in a series of home invasion robberies; they obtained a search warrant for her phones; the warrant allowed a search for, among other things, "location data . . . photographs . . . correspondence . . . [and] telephone and address books . . . which reflect the receipt, purchase, transmission, and/or communication of a crime"; the reference to "a crime" did not violate the particularity requirement because, in context, it was clear that the search was for evidence of the armed robberies).

Finally, even if this court were, for the sake of argument, to determine the state search warrants were overbroad in date range or scope, the entire warrant does not fall. If this Court found there were inappropriately included items on the list to be seized, those items could be severed from the warrant. *See United States v. Klebig*, 228 Fed. Appx. 613, 618 (7th Cir. 2007) (Similarly, in this case, even with the government's concession that the "any oil" language was overbroad and lacking in specificity, the search for "any chemicals" remains valid, as it was stated with sufficient particularity and severable from any invalid search.); *United States v. Reed*, 726 F.2d 339, 342 (7th Cir.1984) (Even if "proof of residency" as the object of a search

were vague and overbroad, however, only that much of the June 5, 1979, warrant would fail. The search for cocaine would remain valid as stated with sufficient particularity and severable from any invalid search.).

If this Court found that the description of the items or the timeframe was too broad, again, Singleton is not entitled to the remedy he seeks—"the blanket suppression of <u>all</u> [items] seized." *United States v. Aboshady*, 951 F.3d 1, 9 (1st Cir. 2020) (internal quotations and citation omitted). Instead, if the scope of the warrant was too broad, Singleton would only be entitled to suppression of evidence that "reasonably fell outside the scope of the warrant" unless the "lawful and unlawful parts of the search are inextricably intertwined or where the lawful part seems to have been a kind of pretext for the unlawful part." *Id.* (internal quotation omitted). Singleton cannot show either. As to the latter, this is not a case where authorities had probable cause to search for one crime, but really wanted to find evidence of another. As to the former, none of the evidence recovered is inextricably intertwined such that suppression of the entire phone is required.

### C. The "Good Faith" Exception to the Exclusionary Rule—the Primary Inquiry—Precludes Suppression.

Even if this court were to find that the search warrants were not sufficiently particularized, Singleton's motion to suppress should be denied because law enforcement executing the search relied on the warrant in good faith. *See United States v. Dickerson*, 975 F.2d 1245, 1249 (7th Cir. 1992) ("Evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant will not be suppressed unless 'a reasonably well trained officer would have known that the

18

search was illegal despite the magistrate's authorization."') (quoting *Leon*, 468 U.S. 922 n.23). As the Seventh Circuit explained:

> Overcoming the presumption of good faith is no small feat, as an officer cannot ordinarily be expected to question a judge's probable cause determination. Reflecting this high standard, we have found that *Leon*'s protection did not apply only on rare occasions—indeed, on only one occasion in recent years.

*United States v. Lickers*, 928 F.3d 609, 619 (7th Cir. 2019) (citing *Owens v. United States*, 387 F.3d 607, 608 (7th Cir. 2004)).

An officer's "decision to obtain a warrant is *prima facie* evidence that he was acting in good faith." *United States v. Peck*, 317 F.3d 754, 757 (7th Cir. 2003). And the Seventh Circuit has "repeatedly credited an officer's choice to confer with an attorney before seeking a warrant as evidence of good faith." *United States v. Matthews*, 12 F.4th 647, 656, 656 n.18 (7th Cir. 2021) (collecting cases). It is Singleton's burden to rebut this presumption. *United States v. Garcia*, 528 F.3d 481, 487 (7th Cir. 2008). To do so, Singleton must show "(1) the affiant misled the magistrate with information the affiant knew was false or would have known was false but for the affiant's reckless disregard for the truth; (2) the magistrate wholly abandoned the judicial role and instead acted as an adjunct law-enforcement officer; (3) the affidavit was bare boned, so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; [or] (4) the warrant was so facially deficient in particularizing its scope that the officers could not reasonably presume it was valid." *United States v. Rees*, 957 F.3d 761, 771 (7th Cir. 2020) (cleaned up). Singleton has not satisfied his burden of rebutting this presumption.

19

With respect to the first two factors, Singleton does not allege, and there is nothing to indicate, that Judges Stephenson or Ayala-Gonzalez abandoned their detached and neutral role, or that Detective Seigel was dishonest or reckless in preparing the affidavit. Nor does Singleton allege a lack of probable cause to support the warrant. With respect to the fourth factor, as explained in greater detail below, Detective Siegel consulted with an Assistant State's Attorney on the warrants, Judges Stephenson and Ayala-Gonzalez authorized the warrants, and law enforcement reasonably relied on the warrants in conducting the search of Singleton's cell phones. *See Krull*, 480 U.S. at 349 ("It is the judicial officer's responsibility to determine whether probable cause exists to issue a warrant, and, in the ordinary case, police officers cannot be expected to question that determination."). The warrants were not "so facially deficient in particularizing its scope" where the warrants correctly identified the cell phones to be searched and the items to be seized. *See, e.g.,* R. 65-1 at 4. Nothing about the warrant, the surrounding circumstances, or the law relating to the search indicates that a reasonable officer would not have relied on the warrants under these facts. Therefore, even if the warrants in this case were somehow invalid, the good-faith exception protects the search and the evidence derived from the search from suppression.

## D. The Federal Warrants Are Not Fruit of the Poisonous Tree.

Even if the Court found that the state warrants were not supported by probable cause, that the warrants lacked particularity, and that law enforcement lacked good faith in relying on those warrants, the federal cell-site warrants should still not be suppressed.

If law enforcement obtains evidence by way of an independent legal source, such as a warrant, suppression is inappropriate. "The independent source doctrine recognizes that the goal of the exclusionary rule is to put 'the police in the same, not a worse, position than they would have been in if no police error had occurred.'" *United States v. Huskisson*, 926 F.3d 369, 374 (7th Cir. 2019) (quoting *Nix v. Williams*, 467 U.S. 431, 443 (1984)). To decide whether the federal warrants are an independent legal source, the Seventh Circuit asks: "first, did the illegally obtained evidence affect the magistrate's decision to issue the warrant? And second, did the illegally obtained evidence affect the government's decision to apply for the warrant?" *Huskisson*, 926 F.3d at 374.

As to the first question, in *United States v. Oakley*, 944 F.2d 384, 386 (7th Cir. 1991), the court held a search warrant obtained in part by illegally attained information will still support a search if the untainted information, considered alone, is enough to establish probable cause. Even without use of the information contained in Singleton's cell phones, the affidavit had sufficient probable cause to support the cell site warrants, including: a description of the carjacking of Victim A on November 3, 2022 (R. 65-2 ¶¶ 10-12); a description of the carjacking of Victim B later on November 3, 2022 (R. 65-2 ¶¶ 13-15); a description of the helicopter pursuit of the getaway car that occurred approximately an hour after the attempted carjacking of Victim B (*Id.* at ¶¶ 16-17); the arrest of Davis, Bradley, and Singleton (*Id.* at ¶ 17); the recovery of two firearms after the helicopter pursuit (*Id.* at ¶ 19.); and the recovery of six cell phones from Singleton, Davis, and Bradley at the time of their

21

arrest on November 3, 2022 (*Id.* at ¶ 25). Those facts alone establish that there is probable cause to believe that location information from the phone provider is evidence of the carjackings.

As to the question of whether Singleton's phone numbers would have been known to law enforcement without the warrants, search warrants of co-defendants' phones in this case revealed contact information for both of Singleton's phone numbers. Singleton is an aspiring rapper who goes by the username "Big G Rell." Below is a screenshot from one of his music videos, which was posted on or about November 1, 2022.[5]



Bradley's phone had Singleton's -7281 number saved as "Rell" and his CashApp with the same number saved as "G Rell." (GX 2 at 1, Bradley's Cellbrite Report.) Bradley's phone had Singleton's -5709 number also saved as "Rell" and his CashApp with the same number saved as "Biggrell." (GX 2 at 2.) Davis's two phones had Singleton's -

---

[5] *See* https://www.youtube.com/watch?v=XncDCVAw79M (last access on April 28, 2025).

5709 number saved as "Grell" and "G Rell." (GX 3 (Davis's Cellbrite Report.) As noted above and attached as Government's Exhibit 4, Singleton Phone 3 was inventoried with a Visa debit card in the name of "Jarell Singleton." The front of that card had the moniker "$GrellDaMan." (GX 4, Photo of Singleton Phone 3.). Law enforcement, therefore, has independent sources of Singleton's phone numbers.

If this Court gets to the second question in this inquiry—whether the illegally obtained evidence affected the government's decision to apply for the warrant—an evidentiary hearing will be necessary. The government contends it did not, where it regularly applies for cell-site warrants in similar cases.

### E. The Motion for Bill of Particulars Should Be Denied.

The indictment in this case charges Singleton with conspiracy to carjack, in violation of 18 U.S.C. § 371 (Count One); carjacking, in violation of 18 U.S.C. § 2119 (Count Two); using, carrying, and brandishing a firearm during and in relation to a crime of violence (carjacking, in Count Two), in violation of 18 U.S.C. § 924(c)(1)(A) (Count Three); attempted carjacking, in violation of 18 U.S.C. § Section 2119 (Count Four); and unlawful possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1) (Count Five). Singleton now moves for a bill of particulars as to Count Three, the 924(c), in which he is charged with co-defendant Davis. R. 65 at 10. Singleton states the indictment fails to identify which firearm Singleton and Davis are accused of having possessed. *Id.*

"The test for whether a bill of particulars is necessary is whether the indictment sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges to enable him to prepare for trial." *United States v.*

*Kendall*, 665 F.2d 126, 134 (7th Cir. 1981); *accord United States v. Vaughn*, 722 F.3d 918, 927 (7th Cir. 2013). "[A]n indictment that includes each of the elements of the charged offense, the time and place of the accused's allegedly criminal conduct, and a citation to the applicable statute or statutes is sufficient to meet that standard." *Vaughn*, 722 F.3d at 927. Count Three of the indictment in this case satisfies each of these criteria. It includes the elements of the offense, alleging (1) a crime of violence occurred on November 3, 2022, and (2) Davis and Singleton used, carried, and brandished a firearm during and in relation to that carjacking; it includes the time and place of the criminal conduct: Chicago, on November 3, 2022; and it includes a citation to the statute.

A defendant only has a constitutional right to know the offenses with which he is charged, not "the details of how it will be proved." *Kendall*, 665 F.2d at 135. Thus, a bill of particulars may not be used to obtain evidentiary details about the government's case. *See United States v. Glecier*, 923 F.2d 496, 501 (7th Cir. 1991). And "a bill of particulars is unnecessary if the information the defendant seeks is readily available through alternate means such as discovery." *Vaughn*, 722 F.3d at 927.

The government has disclosed in discovery surveillance video footage from the November 3, 2022 carjacking depicting two individuals, Davis and Individual A, each brandishing a firearm to commit the carjacking, as reflected in the screenshot below.[6]

---

[6] The government also produced in discovery evidence concerning the seizure of one firearm from the vicinity of the arrests of Singleton, Davis, and Bradley that closely resembles the firearm Davis used during the carjacking.



Singleton is criminally liable for the substantive crimes committed by his co-conspirators in furtherance of, and as a foreseeable consequence of, the conspiracy. *See Pinkerton v. United States*, 328 U.S. 640, 647-48 (1956); *see also Reyes v. United States*, 998 F.3d 753, 758 (7th Cir. 2021) (affirming use of a *Pinkerton* liability jury instruction for a co-defendant's brandishing of a firearm during a bank robbery).

## IV.     CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny Singleton's motion to suppress and for a bill of particulars.

Respectfully submitted,
ANDREW S. BOUTROS
United States Attorney

By:   */s/ Margaret A. Steindorf*
MARGARET A. STEINDORF
Assistant United States Attorney
219 South Dearborn St., Rm. 500
Chicago, Illinois 60604
(312) 353-5300

Date: May 1, 2025